Robert L. Neimeic, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued May 8, 1981, before President Judge CRUM-
LISH and Judges ROGERS and WILLIAMS, JR., sitting as
a panel of three.

*Kenneth A. Zak,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General,
with him, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondent.

OPINION BY JUDGE ROGERS, June 10, 1981:

Robert Neimeic (claimant) appeals from an order
of the Unemployment Compensation Board of Review
(Board) reversing a referee's grant of unemployment
benefits.

Two hearings were held. At the first hearing the
evidence showed that the claimant had been employed
for two and one-half years as a welder for General
Electric Company and that he had been dismissed
from his employment for violating a company rule

prohibiting the use or possession of illegal drugs on the employer's premises. A General Electric security guard testified that in the early morning hours of September 26, 1979, he saw the claimant and two companions get into a van parked on company property.

A: —and [then] the driver lit up—pulled something out of his lap—lit it up—and it flared up—and looked like a marijuana cigarette at that time—O.K. Mr. Neimeic put his cigarette into a pot in the back of the van— shook it to make sure it was out—set it down— the driver took a couple of drags passed the— what appeared to be a marijuana cigarette to Mr. Neimeic, and he took a couple drags and then he passed it back up—the driver took a couple more drags on it—at that point he passed it to the female who was sitting on the passenger's side—she took a couple of drags on it—that is when I left the car, walked over to the van—

. . . .

A: O.K. As I was looking into the Van, I could see a plate on the floor—and on it was more of this substance that he was rolling the cigarette on the cigarette papers—

Q: Well do you mean like a dish—

A: No, like a pot—ah—cardboard—paper plate—

. . . .

Q: So that when you approached the Van you say the driver was in the process of rolling a cigarette and then what next happened?

A: O.K. He looked up at me—at that time Mr. Neimeic still had—he was the last one to have this cigarette that was passed around—

Q: All right—then what happened?

A: O.K.—I asked them to come out of the Van—and—ah—as they came out, you could tell—see it in the air—which I've smelled many times—it's nothing new to me—

Claimant admitted to the events at issue in broad outline but denied personally smoking any marijuana or having any knowledge of its presence in the van. Over the hearsay objection of claimant's counsel a report of the Pennsylvania State Police regional laboratory was introduced indicating that a sample of the substance obtained from the paper plate in the van was marijuana. The referee reversed the denial of benefits by the Office of Employment Security evidently reasoning that absent the laboratory report, properly objected to as hearsay, there was no competent evidence that the substance found in the van was marijuana.[1]

The employer then filed a pre-printed document styled a "Petition for Appeal" on which was typewritten

I believe that another hearing should be scheduled to allow additional testimony and to further clarify item 8 in the Findings of Fact [concerning submission of the suspected marijuana to the State Police laboratory].

The Board acceded to the employer's request and ordered the scheduling of an additional hearing and the taking of additional evidence. A second hearing was scheduled and on receipt of notice of that hearing claimant's counsel, by letter, immediately protested to the Board that the claimant had been given no notice of an therefore had been unable to contest the employer's Appeal Petition. Nevertheless, the claim-

---

[1] We note that *Boulware v. Unemployment Compensation Board of Review*, 47 Pa. Commonwealth Ct. 452, 408 A.2d 564 (1979) establishes that eyewitness lay testimony of marijuana use is sufficient evidence to support a finding of willful misconduct.

ant and his counsel appeared at the hearing at which time additional expert testimony was introduced in support of an identification of the substance found in the van was marijuana. The claimant's counsel challenged the witnesses' expert qualification and objected vigorously to his testimony on the basis of assertedly fatal missing links in the chain of custody of the substance.

The Board then adopted the referee's findings of fact; found additionally that the disputed substance was marijuana and that the claimant was aware of the employer's reasonable rule forbidding the use and possession of illegal drugs; and reversed the referee's decision, thereby denying benefits.

On this appeal the claimant contends that the Board improperly failed to notify him of the employer's appeal and, on the merits, that there is insufficient evidence to support the willful misconduct determination.

34 Pa. Code §101.103 provides:

Notification of filing of application for further appeal.

Notice of the application for the allowance of an appeal (petition for further appeal) shall be furnished by the local employment office wherein such application was filed, to the central office of the Board and to each party to the claim proceedings, by personal delivery or by mailing it to his last known post office address.

Thus it is clear that the local employment office is charged with the responsibility of informing the claimant of an appeal from the referee's grant of benefits. No particular form of notice is specified. Personal delivery or delivery by regular mail is sufficient. On direct examination at the second hearing claimant testified:

A: The 18th I think was the first time I heard from the unemployment office. . .

Q: 18th of?

A: January.

Q: OK and what did you hear?

A: GE appealed it.

Q: Who told you that?

A: The girl at the desk where I sign for my check.

Q: So it was an oral comment? Did you receive anything in writing to the effect that there had been an appeal?

A: A few days later, I think it was the 24th, something like that.

Q: OK what did you receive?

A: Notice for a hearing for Friday.

Therefore, it is clear that the claimant was notified orally by the unemployment office of the employer's appeal and was notified in writing of the Board's action of scheduling a hearing for the purpose of taking additional evidence. This is not a case like *Break N Eat Corporation v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 586, 401 A.2d 423 (1979) and *Mileski v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 334, 379 A.2d 643 (1977) where the Board's failure to notify the claimant of an appeal by the employer effectively deprived the claimant of the opportunity to be heard. Rather, this case is similar to *Unemployment Compensation Board of Review v. Holley*, 24 Pa. Commonwealth Ct. 16, 353 A.2d 905 (1976) where we held that the Board's failure to notify the claimant of the employer's request for reconsideration was not reversible error where the only action taken on the employer's request was the scheduling of an evidentiary hearing of which the claimant was given notice and which he did attend.

The claimant argues that he was prejudiced by the Board's action because he wished to oppose the introduction of additional evidence by the employer on the grounds that such evidence was reasonably available at the time of the first hearing and should have been introduced then. However, the claimant was able to propound this argument at length on the occasion of the second hearing before a referee acting as the Board's agent. There was no prejudice. Moreover, on this point, Section 203(d) of the Unemployment Compensation Law, 43 P.S. 763(d) confers on the Board discretion to ''take such action required for the hearing and disposition of Appeals as it deems necessary''. *See Fisher v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 518, 393 A.2d 1304 (1978).

Claimant also contends that the Board's findings are insufficiently supported by the evidence of record. Pertinently, the Board found:

2. During a lunch break at or about 3:00 o'clock a.m. on September 26, 1979 the claimant was observed by a security guard of the employer entering a van along with two-co-workers in the employer's parking lot.

3. After observing certain smoking by the occupants of the van the security guard approached the vehicle, asked each of the occupants, including the claimant, to step out of the vehicle, and then asked the claimant and his co-workers if they had been smoking marijuana.

4. The claimant responded in the negative to the question of the employer's security guard following which the security guard searched the vehicle in which the claimant had been observed and removed therefrom a certain paper plate containing a substance which the em-

ployer's security guard believed to have been marijuana.

. . . .

6. The vehicle in which the claimant was observed with his co-workers during the early morning hour on the claimant's last day was the property of one of the co-workers.

7. Following the claimant's denial that he had been smoking marijuana when observed by the employer's security guard the claimant was suspended pending further investigation and on October 15, 1979 was advised of dismissal for violation of the employer's rule prohibiting the possession or use of illegal drugs upon the employer's premises.

8. The substance found by the employer's security guard upon the paper plate in the vehicle occupied by the claimant and his co-workers was submitted by the employer to the Pennsylvania State Police for identification.

. . . .

9. The substance found by the employer's security guard upon the paper plate in the vehicle occupied by the claimant and his co-workers was marijuana.

Each of these findings is abundantly supported by competent evidence. However, the Board failed to find that the claimant was in possession of or smoking the marijuana in the van. Possession or use of the illegal drug was the critical factual issue. While the record might support an inference unfavorable to the claimant, inferences, like findings, are not for us to make. *Unemployment Compensation Board of Review v. Cardellino*, 24 Pa. Commonwealth Ct. 617, 357 A.2d 710 (1976).

We reverse the Board's order and remand the record for further proceedings not inconsistent herewith.

612 

ORDER

AND Now, this 10th day of June, 1981, the order of the Unemployment Compensation Board of Review is reversed and the record is remanded to the Board for further proceedings consistent with this opinion.